IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROBIN J. SIMMONS-BLOUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:06CV944 |
| | ) | |
| GUILFORD COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

BEATY, Chief Judge.

This matter is before the Court on Defendant Guilford County Board of Education's ("Board of Education") Renewed Motion for Summary Judgment [Doc. #48] and Motion to Strike [Doc. #58]. The Court previously denied Defendant's Motion for Summary Judgment without prejudice in its June 4, 2009 Order [Doc. #47]. In that Order, the Court granted the parties a period of additional discovery with regard to Plaintiff's discriminatory discipline claim relating to Defendant's treatment of another teacher at the same school, Ms. Byrd ("Byrd").[1] Presently, discovery has closed, and Defendant has renewed its Motion for Summary Judgment.

In considering a defendant's motion for summary judgment, the Court must view the facts and all justifiable inferences from the evidence in the light most favorable to the plaintiff, the non-moving party. United States v. Diebold, 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). In the present case, Plaintiff Robin Simmons-Blount ("Plaintiff") was a teacher

---

[1] Ms. Byrd is now known as Kenyatta Ridley. For the purposes of this Order, the Court will refer to Ms. Ridley using her surname at the time of the relevant incidents, "Byrd."

at Ben L. Smith High School ("Smith High") in Greensboro, NC, between August 2003 and October 2005. (Pl.'s Dep. [Doc. #29, Att. #1]at 27-28; Compl. [Doc. #2] ¶ 3.) At all times during her employment at Smith High, Plaintiff, an African-American woman, was over the age of forty. (Pl.'s Dep. [Doc. #29, Att. #1] at 8, 27-28.) Sam Misher ("Misher") was the principal of Smith High, which operates under the control and supervision of the Board of Education. (Misher Aff. [Doc. #29, Att. #3] ¶2.) Plaintiff resigned her position at Smith High on October 7, 2005, following the course of events laid out below. (Pl.'s Dep. [Doc. #29, Att. #1]at 27-28; Compl. [Doc. #2] ¶ 3.)

On October 5, 2005, Plaintiff was teaching a theater class at Smith High. (Pl.'s Dep. [Doc. #29, Att. #1]at 32.) At some point during this class, the school's assistant principal briefly called several students attending Plaintiff's class to his office. Id. at 33-34, 36-37, 39. When these students returned to class, one student in particular, Jessica Caravello ("Caravello"), refused to return to her seat and stood at the center of the classroom eating candy. Id. at 42-43. At this point, Plaintiff instructed Caravello to return to her seat. Id. at 43-47. Caravello refused to do so, and following a further verbal exchange, Caravello sat in Plaintiff's chair and refused to move to a different seat. Id. at 46. Plaintiff instructed Caravello to change seats, and after Plaintiff placed her hands on the chair and attempted to remove Caravello, a physical confrontation ensued between Plaintiff and Caravello, which spilled into the hallway. Id. at 49-53. This altercation was ultimately broken up by another staff member of Smith High. Id. at 53-54.

Misher conducted an investigation into the incident, during which he gathered witness statements from students at the scene. (Misher Aff. [Doc. #29, Att. #3] ¶¶ 7, 8.) Misher determined through these statements that Plaintiff used inappropriate force in dealing with Caravello, and that Plaintiff "violated the standards of conduct expected of teachers in the Guilford County Schools." Id. at ¶ 9. Misher then referred the case to the Board of Education's Human Resources Department. Id. at ¶ 10. On October 7, 2005, Plaintiff met with Shirley Morrison, Executive Director of Human Resources, and Carla Alphin, staff investigator, at the Guildford County Schools' Human Resources office. (Pl.'s Dep. [Doc. #29, Att. #2] at 108; Misher Aff. [Doc. #29, Att. #3] ¶ 4.) Morrison is the individual responsible for making disciplinary decisions within the Board of Education, and Misher does not have authority as principal to terminate a teacher's employment. (Alphin Aff.[Doc. #48, Att. #4] ¶ 6; Morrison Aff.[Doc. #48, Att. #3] ¶ 6.) During that meeting, Morrison and Alphin asked Plaintiff several questions about the incident with Caravello, and they informed Plaintiff that the Human Resources Department would investigate the incident and that Plaintiff could face termination due to her conduct. (Alphin Aff.[Doc. #48, Att. #4] ¶ 8; Morrison Aff.[Doc. #48, Att. #3] ¶ 8.) The meeting ended with Plaintiff signing a letter of resignation, along with a "Resignation and Release of Liability." Id. (Pl.'s Dep. [Doc. #29, Att. #2] at 121; Pl.'s Dep. Ex. 4 [Doc. #29, Att. #4]; Pl.'s Dep. Ex. 5 [Doc. #29, Att. #5].) Plaintiff claims that her October 7, 2005 resignation was involuntary due to "verbal threats."[2] (Compl. [Doc. #2] ¶ 3.)

---

[2]   Plaintiff argues that although she signed a letter of resignation, she was constructively discharged from her position because she "was forced to resign after being verbally threatened repeatedly[.]" (Compl. [Doc. #2] ¶ 3.) Defendant disputes Plaintiff's claim of constructive

3

On July 31, 2006, the U.S. Equal Employment Opportunity Commission ("EEOC") mailed Plaintiff a right to sue letter. (Compl. [Doc. #2] at 7.) Plaintiff filed the instant *pro se* action against the Board of Education and Michael Harris ("Harris"), an agent of the Board of Education,[3] alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA."), 29 U.S.C. § 621 et seq. (Compl. [Doc. #2].) Defendants Harris and the Board of Education filed a Motion for Summary Judgment on October 16, 2008, to which responsive pleadings were timely filed. On April 7, 2009, the Magistrate Judge filed a Recommendation, which concluded that the Motion for Summary Judgment should be granted in its entirety. Both parties filed timely objections.

On June 4, 2009, this Court issued an Order which adopted the Magistrate's Recommendation to the extent that it dismissed Plaintiff's claims against Michael Harris, that it determined Plaintiff had exhausted her administrative remedies, that she had not waived her right to pursue Title VII and ADEA claims, and that Defendants' Rule 36 Requests for Admission were not deemed admitted by Plaintiff. However, the Court declined to adopt the portion of the Recommendation granting summary judgment to Defendant Board of Education. The Court found that additional discovery was necessary with respect to Plaintiff's

---

discharged and maintains that her resignation was voluntary. (Answer [Doc. #17] at 3.) However, for the reasons laid out below, even assuming Plaintiff's departure from Smith High was due to her constructive discharge, it would be of no avail to Plaintiff because in any event, she has failed to established key elements of her discriminatory discipline claim.

[3] Plaintiff also initially named "Guilford County Schools" and Jill R. Wilson as Defendants to this action. Pursuant to the Court's December 5, 2007 Order, all claims against these Defendants have been dismissed.

4

discriminatory discipline claim against Defendant, related to Plaintiff's contention that she was disciplined more harshly than another teacher, Byrd, who was allegedly involved in a similar incident. The Court therefore ordered the discovery period re-opened for an additional 30 days and ordered the Board of Education to provide Plaintiff with various information, including "Ms. Byrd's age; her race; any investigation, statements, or reports regarding the alleged incident involving Ms. Byrd; the identity of the person(s) who made the decision regarding Plaintiff's discipline and who made the decision regarding Ms. Byrd's discipline; and any other information related to Plaintiff's incident or Ms. Byrd's incident contained in Defendant['s] files, including any results of the EEOC investigation into the incidents." The Court also noted that "[i]n any renewed Motion for Summary Judgment, the Board of Education should address the actual issues before this Court, specifically whether there is a genuine issue of material fact for trial." The Court then denied Defendants' Motion for Summary Judgment without prejudice to the Board of Education refiling a Motion for Summary Judgment at the end of the 30-day discovery period. On July 13, 2009, after the supplemental discovery period had expired, the Board of Education filed the present Renewed Motion for Summary Judgment [Doc. #48].

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively

5

demonstrate that there is a genuine issue of material fact which requires trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986); Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 817 (4th Cir. 1995). When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913; Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997).

Plaintiff alleges in her Complaint that she was subjected to discriminatory discipline based on her race, in violation of Title VII, and based on her age, in violation of the ADEA. (Pl.'s Compl. [Doc. #2] at. 1-2.) Under Title VII, it is unlawful for an employer to discriminate against an employee based on that individual's "race, color, religion, sex, or national origin." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56, 126 S. Ct. 2405 (2006) (quoting 42 U.S.C. § 2000e-2(a)). Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 141, 120 S. Ct. 2097 (2000); see 29 U.S.C. § 623(a)(1)).

First, with respect to Plaintiff's Title VII and ADEA claims, in order to establish a prima facie claim of discriminatory discipline, three elements must be shown pursuant to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973): (1) Plaintiff is a member of a protected class; (2) the prohibited conduct in which

Plaintiff engaged was comparable in seriousness to the misconduct of similarly-situated employees outside the protected class; and (3) the disciplinary measures enforced against Plaintiff were more severe than those enforced against similarly-situated employees outside the protected class who engaged in comparable misconduct. See Prince-Garrison v. Md. Dept. of Health & Mental Hygiene, 2009 WL 667421 (4th Cir. March 13, 2009); Lightner v. Wilmington, 545 F.3d 260 (4th Cir. 2008); Banks v. Jefferson-Smurfit, 176 F. Supp. 2d 499, 509 (M.D.N.C. 2001), aff'd, 37 Fed. Appx. 610 (4th Cir. 2002); Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). In addition, "[i]f different decision makers are involved, employees are generally not similarly situated." Holtz v. Jefferson Smurfit Corp., 408 F.Supp.2d 193, 206 (M.D.N.C. 2006). If a plaintiff can establish a prima facie discriminatory discipline claim, the burden of going forward then shifts to the employer "who must articulate a non-discriminatory reason for the difference in disciplinary enforcement." Jones v. Southcorr, LLC, 324 F. Supp. 2d 765, 777-80 (M.D.N.C.), aff'd, 117 Fed. Appx. 291 (4th Cir. 2004). If the employer is able to articulate a legitimate, non-discriminatory reason for the discrepancy, the burden shifts back to the plaintiff to demonstrate that the employer's stated reasons are not true but instead serve as a pretext for discrimination. See, e.g., Reeves, 530 U.S. at 143 (2000); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir.2004) (en banc). The plaintiff, however, always bears the ultimate burden of proving that the employer intentionally discriminated against him. See Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089 (1981); Moore, 754 F.2d at 1106. In addition, discrimination cases under the McDonnell Douglas burden-shifting scheme may be properly considered under summary judgment principles. See Hux v.

City of Newport News, Va., 451 F.3d 311, 315 (4th Cir. 2006) ("The summary judgment standards mesh comfortably with the McDonnell Douglas framework.").

In the instant case, with regard to the first prong of a prima facie discriminatory discipline claim, Plaintiff initially claimed in her Complaint that she was within the protected class both on the basis of race and age, and that correspondingly, Byrd fell outside of the protected class on the basis of race and age. (Compl. [Doc. #2] ¶ 4.) According to an affidavit later submitted by Defendant, Byrd is an African-American female, who was under the age of forty at all times relevant to this case. (Byrd Aff. [Doc. #49, Att. 1] ¶ 3.) This additional discovery has thus demonstrated that Byrd falls outside of the protected class for purposes of the ADEA, on the grounds that she was below the age of forty during the relevant time period, but that Byrd falls within the protected class for Title VII purposes, because she shares the same race with Plaintiff. Therefore, Plaintiff now maintains instead that Byrd falls outside of the Title VII protected class with regard to "color," and that Plaintiff was discriminated on the basis of color, as well as her age. (Pl.'s Resp. [Doc. #55] at 2-4 .) Defendant disputes this claim, arguing that Plaintiff is proscribed from now amending her Complaint, and also asserting that Plaintiff has failed to exhaust her administrative remedies because her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") did not allege in any manner a color-based discrimination claim. (Def.'s Br. Supp. Summ. Judg. [Doc. #49] at 9-10.) Nonetheless, the Court does not need to determine whether Plaintiff may properly allege a color-based disparate treatment claim at this juncture, because in any event, Plaintiff has failed to articulate a genuine issue of material fact with regard to the second prong of the prima facie case discriminatory

8

discipline test that exists under both Title VII and the ADEA, that is, whether "the prohibited conduct in which Plaintiff engaged was comparable in seriousness to the misconduct of employees outside the protected class." Prince-Garrison, 2009 WL 667421.

As to this second prong of the prima facie discriminatory discipline test, after granting Plaintiff all justifiable inferences from the evidence and viewing the evidence in the light most favorable to Plaintiff, this Court concludes that Plaintiff has not presented evidence sufficient to create a genuine issue of material fact regarding whether Byrd's alleged actions constituted conduct of comparable seriousness to Plaintiff's. Following the completion of discovery in this case, Plaintiff has failed to present any admissible evidence sufficient to demonstrate the comparability of Byrd's alleged altercation with Plaintiff's. Plaintiff herself did not witness any alleged incident involving Byrd, nor has Plaintiff produced any additional witnesses with firsthand knowledge of any alleged altercation involving Byrd.

Conversely, the only evidence that has been provided demonstrates that the circumstances and facts surrounding these two cases vary in several crucial and ultimately dispositive respects. According to Byrd's uncontroverted account, Byrd was pregnant at the time of the incident when she encountered a hostile student in the hallways that attempted to strike her in the stomach. (Byrd Aff. [Doc. #49, Att. 1].) Plaintiff has neither alleged nor demonstrated that Byrd engaged the combative student physically, except, as stated by Defendant, to subdue the student and defend herself and her unborn child. (Byrd Aff. [Doc. #49, Att. 1] ¶¶ 6, 8.) In the present case however, Plaintiff engaged a disruptive student, Caravello, in a verbal and physical altercation, which began in the classroom and spilled into the

9

hallway. (Pl.'s Dep. [Doc. #29, Att. 1] at 46-54.) In the events directly leading up to the altercation, Plaintiff engaged other students in a discussion about lifting Caravello out of her seat, and Plaintiff placed her hands on the chair in which Caravello was seated. Id. A verbal and physical confrontation ensued, which ultimately had to be broken up by another Smith High staff member. Id. Accordingly, as demonstrated by the only relevant evidence submitted in this case, the facts and circumstances surrounding these two incidents were not analogous, and that Plaintiff's and Byrd's respective conduct during these altercations was likewise dissimilar.

Further, the two incidents occurred during different school years and different decisionmakers were involved in each case. The incident involving Byrd took place during the 2004-05 academic year, while Plaintiff's incident occurred during the following 2005-06 academic year. (Pl.'s Dep. [Doc. #29] at 32; Compl. [Doc. #2] ¶ 3; Byrd Aff. [Doc. #49, Att. 1] ¶¶ 3, 4; Misher 2d Aff. [Doc. #49, Att. 2] ¶ 6.) In addition, Misher was the decisionmaker responsible for determining that Byrd's actions did not violate any standards of conduct for teachers of the Guilford County school system. (Misher 2d Aff. [Doc. #49, Att. 2] ¶¶ 7-9.) Misher concluded that Byrd had not violated any of the school's standards of conduct, and Byrd was not subjected to any disciplinary action by the school. Id. The disciplinary decisions made pursuant to Plaintiff's incident on the other hand, were made by members of the Guilford County Schools Human Resources Department, particularly, Carla Alphin and Shirley Morrison (Alphin Aff.[Doc. #48, Att. #4] ¶ 6; Morrison Aff.[Doc. #48, Att. #3] ¶ 6.) Following an investigation into the incident, Alphin and Morrison concluded that Plaintiff's actions violated the standards of conduct for teachers of the Guilford County school system, specifically, that

10

Plaintiff used "inappropriate force in dealing with a student in her charge." (Alphin Aff.[Doc. #48, Att. #4] ¶ 5; Morrison Aff.[Doc. #48, Att. #3] ¶ 5.) For these reasons, Plaintiff has failed to offer evidence which, if viewed in the most favorable light, is sufficient to establish that the prohibited conduct in which Plaintiff engaged was comparable in seriousness to the misconduct of similarly-situated employees outside the relevant protected classes.

Moreover, even if Plaintiff had been able to state a prima facie case of discriminatory discipline under either Title VII or the ADEA, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has offered no evidence that her termination was pretextual. Here, Defendant's stated reasons for terminating Plaintiff was that Plaintiff was not meeting Defendant's expectations as an instructor, and that she violated the Guilford County school system's standards of conduct. (Misher Aff. [Doc. #29, Att. #3] ¶ 9.) To the extent that Plaintiff's claim is based on discriminatory discipline, Defendant has offered a legitimate, nondiscriminatory reason for treating Plaintiff differently than Byrd, specifically that Byrd had not acted inappropriately or violated any rule in defending herself against a combative student, while Plaintiff's actions were found inappropriate under the circumstances and in violation of the school system's code of conduct. In this regard, after considering statements offered by several witnesses of the altercation, Defendant concluded that Plaintiff acted inappropriately in escalating the incident. After conducting a further investigation into the matter, Defendant terminated Plaintiff on these ostensibly legitimate, nondiscriminatory grounds.

In order to rebut this showing, Plaintiff must establish that these grounds merely serve

11

as pretext for discrimination. To do so, a plaintiff bears the "responsibility of proving that the protected trait . . . actually motivated the employer's decision," and that "the employer's proffered explanation is unworthy of credence." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701 (1993) (internal quotation omitted); see also Burdine, 450 U.S. at 253. In other words, in order to establish pretext, a plaintiff bears the ultimate burden of proving that the decision was made not on any proffered grounds but instead on the basis of impermissible discriminatory grounds. Reeves, 530 U.S. at 143. In considering a motion for summary judgment, courts consider the record taken as a whole to determine if "the plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false," creates a genuine issue of material fact with regard to whether "the employer's proffered explanation is unworthy of credence" and consists of mere pretext for discrimination. Matsushita, 475 U.S. at 587 (1986); Reeves, 530 U.S. at 134. Here, considering the record as a whole, Plaintiff has provided no evidence, direct or circumstantial, in support of her claim that genuine issues of material fact remain as to whether Defendant's proffered reason for her termination was merely pretext for discrimination and unworthy of credence. Therefore, Plaintiff's discriminatory discipline claims would fail, even assuming *arguendo*, she had properly stated a prima facie claim pursuant to Title VII or the ADEA.

Finally, Plaintiff seems to assert that under a mixed-motive framework, genuine issues of material fact remain with respect to her discriminatory discipline claim. However, because the mixed-motive framework does not apply in the case of age discrimination claims pursuant to the ADEA, the Court will only consider whether genuine issues of material fact remain as to

12

Plaintiff's Title VII claim pursuant to a mixed-motive analysis.  Gross v. FBL Fin. Servs., 129 S. Ct. 2343, 2350, 174 L. Ed.2d 119 (2009).  The framework for mixed-motive Title VII claims is laid out in 42 U.S.C. § 2000e-2(m), which provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  Under this framework, Title VII plaintiffs "need only demonstrate that an employer used a forbidden consideration with respect to any employment practice." Hill, 354 F.3d at 285 (4th Cir. 2004) (quoting Desert Palace, Inc. v. Costa, 539 U.S. 90, 102, 123 S. Ct. 2148, 2155 (2003)).  In order to obtain mixed-motive jury instruction, plaintiffs must still "present sufficient evidence, direct or circumstantial, for a reasonable jury to conclude, by a preponderance of the evidence, that [a protected ground] was a motivating factor for any employment practice." Id. (internal quotation omitted).

In the present case, Plaintiff has not presented any evidence, circumstantial or direct, which would establish that Plaintiff's termination was motivated in any part by illegal discrimination.  See Burdine, 450 U.S. at 252-53 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")  Plaintiff has failed to present any evidence whatsoever that Defendant's termination decision was based upon forbidden grounds, and therefore, no genuine issues of material fact remain as to any mixed-motive claim under Title VII asserted by Plaintiff.

13

For all of the reasons discussed above, the Court concludes that Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact related to her claims for discriminatory discipline pursuant to Title VII and the ADEA.

IT IS THEREFORE ORDERED that Defendant's Renewed Motion for Summary Judgment [Doc. #48] is GRANTED and Plaintiff's claims against Defendant will be dismissed with prejudice. In addition, Defendant's Motion to Strike [Doc. #58] will be DENIED as moot.

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 7th day of April, 2010.

                                                      United States District Judge